UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BRENDON ALAN McCORD,

        Plaintiff,

        v.                         Case No. 18-C-1311

PEDRO RUIZ, DANIEL CARROLL
GREGORY WALKER, WILLIAM LITTLE,
ANDREW HYNST, and JEFFREY ERICKSON,

        Defendants.

---

## DECISION AND ORDER

---

Plaintiff Brendon Alan McCord, who is representing himself, filed this action under 42 U.S.C. § 1983, alleging that Defendants violated his civil rights. McCord is proceeding on a Fourteenth Amendment due process claim alleging that his placement into segregation without a hearing violated his rights and an Eighth Amendment conditions of confinement claim alleging that the conditions of his cell in segregation were unconstitutional. Currently before the court are cross-motions for summary judgment, which are ready for the court's decision. Dkt. Nos. 38, 51.

### PRELIMINARY MATTERS

At the outset, Defendants argue that the court should disregard McCord's submission because he filed it late and it is not labeled as a response to Defendants' motion for summary judgment. In the alternative, if the court chooses not to disregard McCord's submission, Defendants argue that, because McCord's proposed findings of fact are unsupported by evidentiary materials in the record, the court should deny his submissions and find that Defendants' proposed findings of fact are undisputed.

Defendants filed their summary judgment motion on March 16, 2020, and they included the relevant rules of federal civil procedure and the civil local rules as required by Civil L.R. 56(a)(1)(B). McCord filed what is titled "A Motion for Summary Judgment" on April 24, 2020, but despite the label, it is substantively a response to Defendants' motion for summary judgment. Considering his *pro se* status, the court will construe it as one. Under Civil L.R. 56(b)(2), McCord had thirty days to file his response, so it was due April 16, 2020. This was during the COVID-19 pandemic, and McCord was out of jail. As such, he was subject to Wisconsin's Safer-At-Home rules, which may have caused delays hampering his ability to copy documents and mail his responses. Had McCord asked for an extension, the court would have granted it. Because the motion is clearly a response to Defendants' motion for summary judgment, and because it was less than 10 days late, the court will accept the late-filed submission.

Regarding McCord's failure to follow Fed. R. Civ. P. 56 or Civil L.R. 56, district courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While McCord's proposed findings of fact do not formally conform with the rules, when viewed in conjunction with the sworn testimony from his deposition, his response contains sufficient facts to allow the court to rule on Defendants' summary judgment motion. McCord also invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for the purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in McCord's submissions where appropriate in deciding Defendants' motion.

2

Case 2:18-cv-01311-WCG   Filed 10/02/20   Page 2 of 12   Document 57

## BACKGROUND

**A. McCord's Placement in Segregation**

McCord was a pre-trial detainee housed in the general population at the Milwaukee County Jail when, on February 3, 2018, he witnessed an assault involving three inmates in pod 6B. Dkt. No. 39 ¶¶ 2–3, 6, 9. On February 5, 2018, Nathan Benz, a jail official and not a defendant, began an investigation of the assault in pod 6B for the purposes of determining whether the case should be referred to the Milwaukee County District Attorney's office for charges. *Id.* ¶ 7. Benz' investigation included reviewing six hours' worth of video of the assault, and the video purportedly showed McCord and two other inmates engaging with the alleged perpetrator of the assault. *Id.* ¶¶ 8–9. The video also showed that the alleged perpetrator of the assault may have had a shank or another type of weapon. *Id.* ¶ 10.

As a result, Benz arranged to have the six inmates shown on the video, including McCord, separated from the general population while his investigation was pending. *Id.* Acting on Benz' request, Defendant Pedro Ruiz escorted McCord to the segregation unit, cell 43 in pod 4D. Dkt. No. 49-3 at 29; Dep. Tr. 28:4-5. Other individuals connected to the assault were also moved to segregation. Dkt. No. 39 ¶ 13. McCord alleged in his complaint that he "was placed in segregation without notice or copy of my disciplinary report 24 hours prior to a hearing … which I never had." Dkt. No. 1 at 2. However, in his deposition, McCord acknowledged that he knew he was "sent to 4D pending a criminal investigation" and that he was "not sent there for discipline." Dkt. No. 49-3 at 22; Dep. Tr. 21:16–25. McCord also acknowledged that he was interviewed about the assault, and that after the interview, he was released from segregation, and no charges were filed nor were disciplinary actions taken against him. Dkt. No. 49-3 at 23; Dep. Tr. 22:4–13.

Defendants state that McCord's placement was purely administrative to facilitate the investigation and that inmates in this type of administrative segregation "are able to call any number they wish, receive visits from individuals other than just attorneys, send and receive mail, and read books." Dkt. No. 39 ¶ 72. They also do not have any property restrictions, unlike inmates in punitive segregation, except for items that can be purchased from the commissary. *Id.* This restriction is imposed to prevent those items from being shared with inmates on disciplinary segregation. *Id.*

**B. Conditions of McCord's Segregation Cell**

McCord was in administrative segregation from February 5 until February 8, 2018. Dkt. No. 39 ¶ 4. During that time, he contends that he was denied the ability to take a shower, and the water to his cell was cut off, preventing him from being able to wash his hands or flush the toilet. Dkt. No. 49-3 at 13; Dep. Tr. 12:5–25. He also states that the toilet contained feces and urine for "a day or two . . . but probably less" than 36 hours. Dkt. No. 49-3 at 15; Dep. Tr. 14:6–11. He had to eat his meals in his cell while the toilet was filled with urine and feces. Dkt. No. 49-3 at 13; Dep. Tr. 12:11–12. As a result of these conditions, he asserts he broke out in hives. McCord further alleges that he was denied rec time for the duration of his three-day stay in segregation. Dkt. No. 49-3 at 11, 35; Dep. Tr. 11:15–21, 35:15–18.

Defendants note that in his deposition, McCord testified that the officers in pod 4D "did end up letting me shower though, yes," and that his water was turned back on in less than 36 hours. Dkt. No. 49-3 at 14–16; Dep. Tr. 13:8–12, 14:9–11, 14:25–15:1. Defendants also assert that the jail records do not indicate that the water was shut off in any specific cell during the period between February 5 and February 8, 2018. Dkt. No. 39 ¶¶ 91–97. As such, McCord could have flushed the toilet at any time. *Id.* Regarding McCord's hives, Defendants highlight McCord's medical

4

records, which show that he has a predisposition to breakouts of hives and that he had a breakout on January 25, 2018 while he was in general housing. *Id.* ¶¶ 113–14. McCord also saw a medical professional on February 7, 2018 for the January 25 breakout of his hives and was given a prescription ointment. *Id.* ¶ 115. McCord had another outbreak in May 2018. *Id.* ¶ 117. At that time, McCord testified in his deposition that he was regularly showering and resided in the general population. *Id.* ¶ 118. Regarding rec time, Defendants state that because McCord showered, and the shower is located in the day room, he must have been let out for rec time at least once during his stay in segregation. *Id.* ¶ 76.

McCord also alleges that he complained to specific Defendants about the conditions of his cell, and they did nothing. McCord spoke with Defendant Daniel Carroll when he would walk past his cell. Dkt. No. 49-3 at 27–28; Dep. Tr. 26:23–27:23. McCord would ask Carroll when the water would be turned on and other questions about the condition of his cell. *Id.* McCord also spoke with Defendant William Little while he was doing rounds as a CERT officer, and he told Little that he needed to shower and needed to get the toilet fixed. Dkt. No. 49-3 at 32–33; Dep. Tr. 31:18–32:23. According to McCord, Little specifically told him that they would "get to it" but needed to go "get something" to address the situation. Dkt. No. 49-3 at 33; Dep. Tr. 32:16. McCord also talked to Defendants Andrew Hynst and Jeffery Erickson as they were walking past his cell and relayed complaints about his water and his toilet. Dkt. No. 49-3 at 35–36; Dep. Tr. 34:14–35:3. McCord stated they "brushed him off" *Id*. McCord also talked to a group of officers, one of whom was Defendant Gregory Walker, and they also "blew him off." Dkt. No. 39 ¶ 45.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

5

Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

### A. McCord's Fourteenth Amendment Due Process Claim

McCord claims that his due process rights were violated when he was placed into segregation without a due process hearing. Only Defendant Pedro Ruiz is implicated in this claim because he was the only Defendant involved in McCord's placement into segregation. "To establish a right to due process, a pretrial detainee must demonstrate either 1) an 'expressed intent to punish on the part of detention facility officials' or 2) that the challenged condition or restriction lacked a reasonable relationship to a legitimate non-punitive administrative purpose." *Love v. Kirk*, 360 F. App'x 651, 653 (7th Cir. 2010) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538–539 (1979)). "Restrictions like segregation are not punishment when imposed because of a legitimate governmental objective." *De Jesus v. Odom*, 578 F. App'x 598, 600 (7th Cir. 2014). The

6

segregation must be "reasonably related to a legitimate and non-punitive governmental goal; it may not be arbitrary or purposeless." *Riker v. Carlson*, No. 10-C-906, 2012 WL 2885930, at *4 (E.D. Wis. July 13, 2012) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996)). Placing a pretrial detainee in segregation "'not as punishment but for managerial reasons' . . . would not require notice and a hearing" as long as the pretrial detainee is not kept in segregation once the need for segregation is over. *Miller v. Dobier*, 634 F.3d 412, 415 (7th Cir. 2011) (quoting *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir 2002)).

When taking the facts in a light most favorable to McCord, no reasonable factfinder could conclude that Ruiz violated his due process rights. McCord does not dispute that he was sent to administrative segregation pending a criminal investigation of the alleged assaults that occurred on February 3, 2018. He also acknowledged in his deposition that he was not sent to pod 4D for discipline. Instead, he was sent there while prison officials determined what occurred on the night of February 3 and whether there were contraband weapons involved. This is a managerial reason. *See Miller*, 634 F.3d at 415 (outlining managerial reasons that include when an inmate needs to be protected from other prisoners or other prisoners need to be protected from him). At that point in time, it was unclear to jail officials what McCord's role was during the February 3 incident. There was a legitimate governmental interest in keeping him separate from the rest of the population until his role in the assault, if any, came to light. Once jail officials interviewed McCord, and they determined he did not play any role that would require filing charges or taking disciplinary action, they released McCord from segregation. In total, McCord was in segregation for three days and he was placed on a level of administrative segregation that allowed many more privileges than disciplinary segregation. The court grants summary judgment in favor of Defendants on this claim.

7

**B. McCord's Eighth Amendment Conditions of Confinement Claim**

McCord also claims that the conditions of his cell in pod 4D violated his Eighth Amendment rights, and Defendants were deliberately indifferent to those conditions. Defendants argue that none of them were personally involved in the alleged conditions of confinement claim. "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Taking the facts in the light most favorable to McCord, he complained to every Defendant except Pedro Ruiz about the issues in his cell. He further alleges that those Defendants "brushed him off" or otherwise ignored his complaints. Thus, McCord sufficiently demonstrated that all Defendants except Ruiz were personally involved in the alleged conditions of confinement claim.

The conditions of an inmate's confinement can violate his Eighth Amendment rights "when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results 'in the denial of the minimal civilized measure of life's necessities' and (2) where prison officials are deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In addition, a plaintiff must demonstrate as a result of these conditions, "he suffered some cognizable harm from the overall lack of a sanitary environment, and that the [prison official's] deliberate indifference caused that harm." *Id.* at 1006.

According to McCord, the toilet in his cell was filled with urine and feces for "a day or two . . . but probably less" than 36 hours. Dkt. No. 49-3 at 15; Dep. Tr. 14:6–11. He also showered once during his three-day stay in administrative segregation. He further asserts he was not allowed to go to rec time during his three-day stay. Defendants contend that McCord's water was never

8

shut off, he could flush his toilet at any time. Also, the fact that McCord showered proves he was allowed out for rec time because the only shower available was located in the day room, which inmates can only access during rec time. While these are questions of fact, they are immaterial because, even when taking the facts in a light most favorable to McCord, these conditions of confinement do not rise to the level of an unconstitutional deprivation.

Regarding the filled toilet and lack of access to the shower, "facilities to wash and use the toilet are among the 'minimal civilized measure of life's necessities.'" *Jaros v. Ill. Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). However, this does not mean that institutions are required to provide top-notch facilities; instead they must be "reasonably adequate." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Grey*, 826 F.3d at 1005). Concerning the toilet, long-term or extreme exposure to human waste, especially when compounded with other conditions, clearly is a deprivation contemplated under this standard. *See Cobain v. McLaughlin*, 717 F. App'x 605, 611 (7th Cir. 2017) (reversing summary judgment in defendants' favor where the record showed inmate was placed in a segregation cell where feces were "splashed everywhere" and he was unable to clean the cell for his entire month-long stay); *Vinning-El v. Long*, 482 F.3d 923, 924–925 (7th Cir. 2007) (inmate survived summary judgment where the evidence showed he was placed in a cell with blood and feces on the wall, a lack of running water, and a lack of cleaning supplies); *Johnson v. Pelker*, 891 F.2d 136, 139–140 (7th Cir. 1989) (reversing summary judgment in defendants' favor where inmate's cell was smeared with feces and he was denied water and cleaning supplies). On the other end of the spectrum, "[a] single clogged toilet does not violate the Constitution." *Hardeman*, 933 F.3d at 823. Judge Stadtmueller recently granted summary judgment in favor of the defendants where the plaintiff had been stuck in a cell with a toilet that would not flush for about

9

a day, finding that "Plaintiff has not provided evidence that the toilet overflowed, much less that he slipped in it and was forced to clean the mess himself." *Tenner v. Jackson*, No. 18-cv-232, 2019 WL 2452698, at *3 (E.D. Wis. June 11, 2019).

McCord's exposure to human waste falls towards the "single clogged toilet" end of the spectrum like the plaintiff's exposure in *Tenner*. Assuming McCord's version of the facts, the waste was contained in a non-functioning toilet and not smeared over the surfaces of the cell. Also, according to McCord's deposition testimony, the toilet was fixed in about 36 hours. Prison life can be "certainly unpleasant," but these unpleasant conditions do not rise to the level of a constitutional violation. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). Rather, "extreme deprivations are required to make out a conditions-of-confinement claim." *Turner v. Miller*, 301 F.3d 599, 603 (7th Cir. 2002) (citations and quotations omitted). Compared with complaints of feces-smeared cells, McCord's clogged toilet is not extreme. No reasonable factfinder could determine that the clogged toilet for 36 hours rose to a level of cruel and unusual punishment proscribed by the Eighth Amendment.

Turning to McCord's lack of showers, it is well-established in the Seventh Circuit that "limiting inmates to weekly showers does not violate the Eighth Amendment." *Jaros*, 684 F.3d at 670; *see also Hardaway v. Meyerhoff*, 734 F.3d 740, 744–745 (7th Cir. 2013); *Myrick v. Anglin*, 496 F. App'x 670, 675 (7th Cir. 2012); *Rodriguez v. Briley*, 403 F.3d 952, 952 (7th Cir. 2005); *Henderson v. Lane*, 979 F.2d 466, 468–69 (7th Cir. 1992). McCord testified in his deposition that he showered during that three-day period. No reasonable jury, then, could find that his lack of showers constituted an unconstitutional deprivation.

McCord's lack of rec time during that three-day period also does not rise to the level of an unconstitutional deprivation. While rec time and exercise are "a necessary requirement for

10

Case 2:18-cv-01311-WCG   Filed 10/02/20   Page 10 of 12   Document 57

physical and mental well-being" and depriving inmates of "out-of-cell-exercise opportunities" can violate the Eighth Amendment, *Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001), "short-term denials of exercise" do not violate the Eighth Amendment. *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997). Indeed, the Seventh Circuit has held that denying recreation time for several weeks does not rise to the level of a constitutional violation. *See id.*; *Harris v. Flemming*, 839 F.2d 1231, 1236 (7th Cir. 1988). McCord's three-day denial then does not rise to that level either, unless McCord can show that the denial of rec time has threatened the inmate's health. *Antonelli*, 81 F.3d at 1432. The only threat to his health that McCord alleges is that he broke out in hives as a result of unsanitary conditions. He does not present evidence of any injury or other health issue resulting from lack of rec time. As such, when considering the lack of a health issue combined with the short duration of the deprivation of rec time, no reasonable jury could conclude that the lack of rec time rises to the level of an unconstitutional deprivation.

Because no reasonable fact finder could conclude that McCord's conditions of confinement caused him to suffer an objectively serious deprivation, the court does not have to consider the question of whether Defendants were deliberately indifferent to McCord's conditions or whether McCord's hives constitute a cognizable harm resulting from the lack of sanitary conditions. Summary judgment is granted in favor of the defendants on McCord's Eighth Amendment condition of confinement claim.

## C. Summary

The court grants summary judgment in favor of all of the defendants. For Pedro Ruiz, no reasonable trier of fact could conclude that Ruiz violated McCord's rights by placing him in administrative segregation without a hearing because McCord's segregation was reasonably related to a legitimate and non-punitive governmental interest. For the remaining Defendants, no

11

reasonable factfinder could conclude that McCord's conditions of confinement were an objectively serious deprivation of the minimal civilized measure of life's necessities. Because the court grants summary judgment on the merits, there is no need to address Defendants' qualified immunity argument.

## CONCLUSION

**IT IS THEREFORE ORDERED** that McCord's motion for summary judgment (Dkt. No. 51) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Dkt. No. 38) is **GRANTED.**

**IT IS FURTHER ORDERED** that the case is dismissed. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 2nd day of October, 2020.

s/ William C. Griesbach
William C. Griesbach,
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.